UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TERESA D. HILL,                          )
                                         )    No. 10-CV-0378-JPH
           Plaintiff,                    )
                                         )
v.                                       )    ORDER GRANTING DEFENDANT'S
                                         )    MOTION FOR SUMMARY
MICHAEL J. ASTRUE,                       )    JUDGMENT AND DENYING
Commissioner of Social Security,         )    PLAINTIFF'S MOTION FOR
                                         )    SUMMARY JUDGMENT
           Defendant.                    )
                                         )
                                         )
                                         )

        BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 13, 16.)  Attorney

Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Jeffrey R. McLain

represents defendant.  The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 7.)

After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** defendant's

Motion for Summary Judgment and **DENIES** plaintiff's Motion for Summary Judgment.

## JURISDICTION

        Plaintiff Teresa D. Hill (plaintiff) protectively filed for supplemental security income (SSI) on

January 9, 2007. (Tr. 123, 134.) Plaintiff alleged an onset date of September 1, 2006. (Tr. 123.) Benefits

were denied initially and on reconsideration.  (Tr. 78, 84.)  Plaintiff requested a hearing before an

administrative law judge (ALJ), which was held before ALJ Paul Gaughen on October 23, 2008.   (Tr.

30-48.) Plaintiff was represented by counsel and testified at the hearing. (Tr.33-45.) Vocational expert

Daniel McKinney also testified. (Tr. 45-46.) A second hearing was held on January 15, 2009. (Tr. 51-

75.) Plaintiff again testified. (Tr. 65-68, 72-73.) Medical expert Dr. McKnight and vocational expert

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -1

Sharon Welter also testified. (Tr. 53-65, 68-72.) The ALJ denied benefits (Tr. 8-19) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff went to school through the ninth grade and has a GED. (Tr. 34.) She has work experience as a ride operator, sales clerk, courtesy clerk and warehouse worker. (Tr. 45, 68.) Plaintiff testified that during the period of alleged disability, she could not work because of depression and anxiety. (Tr. 35.) She felt sad a lot and she felt like she was not doing anything right. (Tr. 35-36.) She had difficulty getting out of bed before noon and she rarely left the house. (Tr. 37.) She has bipolar disorder. (Tr. 35.) At the second hearing, plaintiff testified that she last used street drugs in September 2005.[1] (Tr. 54.) She returned to work in October 2007 after her doctor helped her find a combination of medications which stabilized her. (Tr. 40-41.)

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler,* 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted).

---

[1]There is some ambiguity about the date of plaintiff's last drug use. Plaintiff was reported to be sober since September 2005 with one relapse in January 2006. (Tr. 191.) At the first hearing, plaintiff testified she stopped using drugs in September 2006. (Tr. 39-40.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -2

"[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris,* 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen,* 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

A finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001.) When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). It is the claimant's burden to prove substance

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007). If drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity from September 1, 2006 to October 29, 2007, the requested closed period. (Tr. 10.) At step two, the ALJ found plaintiff has the following severe impairments: depression and borderline intellectual functioning. (Tr. 10.) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 14.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She requires a drug and alcohol free work environment. She is able to understand, remember and apply new simple 1-3 step instructions. She is able to retain previously learned instructions. She is not capable of frequent public contact, but is capable of some contact with others. She would need a set work schedule with a predictable routine where there won't be a need for frequent collaboration, at least for the first six months of employment. She has mild deficits in maintaining alertness and pace, but not of a significant or serious nature.

(Tr. 15.) At step four, the ALJ found plaintiff is capable of performing past relevant work. (Tr. 17.) Alternatively, after considering plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy the plaintiff can perform. (Tr. 17.) Thus, the ALJ concluded plaintiff has not been under a disability, as defined in the Social Security Act, since September 1, 2006, the alleged onset date. (Tr. 18.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ: (1) improperly relied on the testimony of the medical expert over the opinions of treating sources; and (2) did not properly reject the opinions of treating and examining sources. (ECF No. 14 at 7-12.) Defendant argues the ALJ properly evaluated the medical

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

1    record.  (ECF No. 17 at 6-13.)

2                                    **DISCUSSION**

3           Plaintiff's claim is for a closed period of disability from September 1, 2006 to October 29,

4    2007.  (Tr. 10.)  The medical records for this 13-month period are somewhat limited.  The most

5    significant records from the relevant period include Community Health Associates of Spokane Clinic

6    medical and counseling records of physician Dr. Bassler and ARNP Melissa Leffler, a psychological

7    assessment by examining psychologist Dr. McRae, and a mental residual functional capacity

8    assessment by Dr. Bailey, a non-examining psychologist.

9           Plaintiff argues the ALJ improperly weighed the medical opinion evidence.  (ECF No. 14 at

10   10-14.)   In disability proceedings, a treating physician's opinion carries more weight than an

11   examining physician's opinion, and an examining physician's opinion is given more weight than that

12   of a non-examining physician.  *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v.*

13   *Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating or examining  physician's opinions are not

14   contradicted, they can be rejected only with clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If

15   contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are

16   supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.

17   1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular

18   medical treatment during the alleged period of disability, and the lack of medical support for doctors'

19   reports based substantially on a claimant's subjective complaints of pain as specific, legitimate

20   reasons for disregarding a treating or examining physician's opinion.  *Flaten v. Secretary of Health*

21   *and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

22   **1.      Dr. McKnight and Dr. McRae**

23          Plaintiff argues the ALJ should not have relied on the testimony of the medical expert, Dr.

24   McKnight, in rejecting the opinion of Dr. McRae, an examining psychologist.  (ECF No. 14 at 11.)

25   Dr. McRae examined plaintiff and prepared a psychological assessment on April 4, 2007.  (Tr. 235-

26   38.)  He diagnosed depressive disorder, NOS; substance induced persisting cognitive and mood

27   problems secondary to amphetamine dependence; methamphetamine and cocaine dependence in full-

28   sustained remission; borderline intellectual functioning and rule out learning disabilities.  (Tr. 238.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -6

Dr. McRae noted plaintiff has difficulty with immediate and delayed auditory memory. (Tr. 238.) He opined she has limited ability to reason and understand on her own behalf and limited judgment. (Tr. 238.)

Dr. McKnight discussed Dr. McRae's report and opined he did not see any basis for concluding plaintiff has a cognitive disorder separate from borderline intellectual functioning. (Tr. 65.) He opined that the basis for Dr. McRae's diagnosis of a cognitive disorder was an out-dated edition of the Wechsler memory scale and "unacceptable administration of a very standardized test." (Tr. 58-59.) Dr. McRae failed to report the standard scores associated with that portion of his testing. (Tr. 59.) Dr. McKnight pointed out that when plaintiff was evaluated by Dr. McRae, she was "clearly able to complete two-step and three-step instructions." (Tr. 63.) Dr. Klein also opined that plaintiff's borderline intellectual functioning "basically takes the place of the substance abuse persistent cognitive and mood problems secondary to amphetamine dependence" diagnosed by Dr. McRae because he didn't do anything other than IQ testing to assess plaintiff's cognition. (Tr. 64.)

The ALJ rejected Dr. McRae's opinion that plaintiff had limited ability to reason and understand because Dr. McKnight testified that the memory testing led to invalid conclusions regarding plaintiff's cognitive functioning. (Tr. 16.) Testimony of a nonexamining advisor may serve as substantial evidence justifying rejection of an examining physician's opinion when supported by and consistent with other evidence in the record. *See Andrews* 53 F.3d at 1043. Additional cases have upheld the rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*,

53 F.3d at 1039.

There is more than a scintilla of evidence supporting Dr. Klein's opinion and consistent with it. Dr. Klein pointed out that GAF assessments by plaintiff's counselors between Arpil 2006 and November 2006 range from 60 to 80. (Tr. 16, 56, 216, 218, 220, 226, 228, 230.) Clinicians use the GAF scale to rate the psychological, social, and occupational functioning of a patient, although the scale does not evaluate impairments caused by psychological or environmental factors. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 598 (9th Cir. 1999). A GAF score of 61-70 indicates "some mild symptoms, (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." A GAF score of 71-80 indicates no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32. Dr. McKnight opined these scores suggest that plaintiff was having some episodic moderate difficulty in limited environments, but otherwise had a mild deficit to very transient deficit depending on the situation. (Tr. 16, 56.)

In addition to the foregoing, the ALJ cited details in plaintiff's counseling and medical records consistent with Dr. McKnight's conclusions. (Tr. 11-13.) In April 2006, ARNP Leffler reported plaintiff appeared future oriented and goal driven to get her children back and maintain sobriety. (Tr. 230.) By June 2006, plaintiff had gone off all medications for the health of her baby during her pregnancy. (Tr. 227.) Her insight and judgment were good and cognitively, she was alert and oriented. (Tr. 227.) Plaintiff had her baby in August 2006. (Tr. 225.) Two weeks later, her overall mood had been stable and she was on no psychotropic medications. (Tr. 225.) Her thought processes were logical and her judgment was good. (Tr. 226.) Nurse Leffler saw no need to restart medications. (Tr. 226.) In October 2006, plaintiff was experiencing some situational anxiety due to her ex getting out of jail and worrying about him "starting something." (Tr. 217.) She denied depression and was planning on attending school in November. (Tr. 217.) Plaintiff's thought processes were logical, memory was normal and her insight and judgment were good. (Tr. 217.) Her symptoms were stable and she had been dealing with stressors appropriately. (Tr. 217.) In January

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

2007, Dr. Bassler noted plaintiff's intelligence was below average and her attention span was distractable. (Tr. 211.)  Plaintiff's insight was poor and impulse control was described as fair.  (Tr. 211.)  In February 2007, plaintiff was doing well on medications but was restless. (Tr. 260.)  Her insight was fair and she was alert and oriented.  (Tr. 260.)  In March 2007, plaintiff's mood was good. (Tr. 263.)  By May, she was feeling sad and depressed and in September, she was restless and irritated. (Tr. 264, 266.)  Her medications were adjusted.  (Tr. 266.)  While there are some variances in the descriptions of plaintiff's mood and cognition over the relevant period, the evidence reasonably supports Dr. McKnight's and the ALJ's conclusions that plaintiff's emotional difficulties were largely situational.  (Tr. 16, 59.)

Plaintiff does not argue the ALJ failed to cite substantial evidence independent of Dr. McKnight's opinion supporting his conclusions.  The RFC includes mental limitations consistent with and supported by other substantial evidence in the record.  Thus, the ALJ did not err by considering and  citing the opinion of Dr. McKnight in rejecting the opinion of Dr. McRae.

Furthermore, in addition to pointing out evidence consistent with Dr. McKnight's testimony, the ALJ pointed out that Dr. McRae's opinion contained no assessment of plaintiff's abilities.  (Tr. 16.)  Indeed, Dr. McRae indicated he was not sure how plaintiff would function and suggested contacting her counselor, job coach, or supervisor at her part-time job to determine how well she is able to remember, concentrate and sustain herself in a work setting.  (Tr. 238.)   It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence.  *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999).  Here, the ALJ resolved the ambiguity in Dr. McRae's opinion by rejecting the opinion.  This is a specific, legitimate reason for rejecting the report and is supported by substantial evidence.

**2.    Dr. Bailey**

Plaintiff also argues the ALJ erred with respect to the opinion of Dr. Bailey, a non-examining state reviewing psychologist.  (ECF No. 14 at 11-12.)  Dr. Bailey completed Psychiatric Review Technique and Mental Residual Functional Capacity Assessment forms on April 11, 2007.  (Tr. 239-55.)  Dr. Bailey identified evidence of substance induced cognitive disorder, depressive disorder NOS, borderline intellectual functioning, rule out learning disability, and methamphetamine/cocaine

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

dependence in full sustained remission.  (Tr. 239-47.)  Dr. Bailey identified seven moderate limitations, but noted in the narrative that plaintiff is capable of simple, repetitive tasks; can concentrate on concrete tasks; could work around others but not in cooperation with them; could have superficial public or coworker contact; and could respond to simple goals set by others.  (Tr. 253-55.)

The ALJ determined Dr. Bailey's findings tend to support the ALJ's conclusions, but observed that "the large number of moderate imitations listed here are a result of substance use, consistent with Dr. McKnight's testimony that with a longer period of abstinence, plaintiff's functioning improves from moderate limitations to only mild."[2]  (Tr. 16.)  Plaintiff's argument is unclear, but plaintiff seems to take issue with the ALJ's characterization of the moderate limitations being "a result of substance use."  (ECF No. 14 at 12.)  Instead, plaintiff argues, the fact that plaintiff's substance use was in full, sustained remission suggests the limitations exist without the effects of substance use.  (ECF No. 14 at 12.)

Without citing the record, plaintiff asserts the vocational expert testified, "the person with those limitations would not be able to maintain competitive employment."  (ECF No. 14 at 12.)  However, the vocational expert testified a person with the limitations assessed by Dr. Bailey could perform work in the national economy.  At the second hearing, the ALJ first posed a hypothetical to the vocational expert based on the limitations assessed by Dr. McKnight and the vocational expert testified the hypothetical person could perform past relevant work.  (Tr. 69-70.)  Plaintiff's attorney then mentioned the seven moderate limitations identified by Dr. Bailey and asked the vocational

_____

[2]Only when the ALJ finds the claimant disabled and there is evidence of substance addiction should the ALJ determine if the claimant would still be disabled absent the substance addiction. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  The ALJ's point is not entirely clear.  If the ALJ intended to reject Dr. Bailey's assessed limitations because they include the effects of substance abuse, the ALJ erred by considering substance abuse without first finding plaintiff disabled.  However, the point is moot since notwithstanding the effects of substance abuse, the vocational expert opined a person with the limitations identified by Dr. Bailey can perform work in the national economy.  (Tr. 70-72.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

expert if there would be any work an individual could perform with those limitations.   (Tr. 70-71.)
The vocational expert testified:

> Well, with simple, routine work should not be problematic for
> maintaining attention and concentration for extended periods.  So, I
> would say the warehouse worker [plaintiff's past relevant work] would
> still be applicable.  No single one of these restrictions precludes work,
> but to have two, four, six, seven moderate restrictions, you know, might
> reduce the number of jobs . . .

(Tr. 71.)  When asked how the number of jobs would be reduced, the vocational expert testified the
number of jobs would probably be reduced by a quarter to a half.  (Tr. 71.)  The ALJ then asked the
vocational expert to consider the specific limitations identified in Dr. Bailey's narrative and the
vocational expert opined that such an individual would be capable of plaintiff's past relevant work as
a warehouse worker.  (Tr. 72.)  Thus, even if the ALJ erred in considering Dr. Bailey's conclusions,
the error is harmless since the vocational expert testified a person with the limitations assessed by Dr.
Bailey could perform work in the national economy.  An error is harmless when the error is
inconsequential to the ultimate nondisability determination.  *See Robbins v. Soc. Sec. Admin.*, 466
F.3d 880, 885 (9th Cir. 2006); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir.
2006).

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is
supported by substantial evidence and is not based on error.

Accordingly,

**IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment **(ECF No. 16)** is **GRANTED.**

2.    Plaintiff's Motion for Summary Judgment **(ECF No. 13)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for
plaintiff and defendant.  Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED April 16, 2012

S/ JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12